# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WISCONSIN

In re:

      Crapp Farms PARTNERSHIP            Case No.

      Debtor.

## DECLARATION OF DARRELL C. CRAPP
## IN SUPPORT OF FIRST DAY MOTIONS

STATE OF WISCONSIN         )
                            ) ss.
COUNTY OF DANE             )

      DARRELL C. CRAPP, having been duly sworn under oath, hereby declares as follows:

1.       I am a partner of Crapp Farms Partnership ("Crapp Farms"), and I have personal knowledge of the operations, property, business affairs, books and records of Crapp Farms, and the other facts set forth in this Declaration.

2.       On May 3, 2017 (the "Petition Date"), Crapp Farms filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "Chapter 11 Case.").

3.       Crapp Farms is operating its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee, and no official committee has yet been appointed by the Office of the United States Trustee.

4.       In order to enable Crapp Farms to minimize any adverse effects of the commencement of the Chapter 11 Case or its business operations, Crapp Farms is requesting various types of relief in certain "first day" motions (each, a "First Day Motion" and collectively, the "First Day Motions"). The First Day Motions seek relief aimed at, among other things, ensuring the continuation of the Debtor's livestock operations without interruption, including

payments to employees and expenses related to the safety and maintenance of the livestock; and ensuring the continuation of other business operations, namely excavating and farms trucking without interruption.

5.      I submit this declaration (the "Declaration") in support of the First Day Motions. I am familiar with the contents of the First Day Motions, and I believe that the relief sought in each First Day Motion (a) is necessary to enable Crapp Farms to operate in Chapter 11 with minimum disruption or loss of productivity or value, (b) constitutes a critical element in making this Chapter 11 Case successful, and (c) is in the best interest of Crapp Farms, its estate, and Crapp Farms' creditors.

6.      Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, information supplied to me by other partners of Crapp Farms' management team or professionals retained by Crapp Farms, information learned from my review of relevant documents, or my opinion based upon my experience and knowledge of Crapp Farms' operations, financial condition and present needs. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Declaration on behalf of Crapp Farms.

## Crapp Farms' History and Business Operations

7.      Crapp Farms has a diverse farming operation consisting of over 10,000 acres of grain crops, corn and soybeans being the primary crops and wheat and alfalfa being secondary. It also has large pork and cattle facilities. It is further supported by an excavating operation and a farm trucking operation. The excavating wing of the partnership is responsible for construction projects with third-party customers, and the trucking operation supports Crapp Farms' grain

operation by hauling products as needed, as well as trucking for other third-party farming entities.

8.     Crapp Farms was formed in 2003, the current partners of Crapp Farms are myself, my spouse, Diana Crapp ("Di"), who is also the business manager of the operations; and our two sons, Carl D. Crapp ("Carl") and Tony D. Crapp ("Tony").

9.     Crapp Farms' operation is located in Potosi, Wisconsin. We have farmed in the area for over a century, going back three (3) generations, and have grown steadily over the years, through both land acquisitions and expanding our livestock operations, as well as adding the trucking and excavating operations. We have been farming for over 41 years, and grew from a small family farm to a farm operation that supports not only ourselves and each of our families, but the families of our full-time and seasonal employees.

10.     Crapp Farms hires skilled workers for production and operation, and provides compensation and benefits to its employees, including but not limited to, health insurance, life insurance, 401(k) benefits, and paid time off.

11.     Prior to the Petition Date, the overall operation was structured as four (4) separate legal entities:  Crapp Farms Partnership which focused primarily on crop production and livestock operations; Crapp Land, LLC ("Crapp Land"), which owned the real estate; Crapp Farms Trucking, LLC ("Crapp Farms Trucking"), which provided hauling/trucking services to the partnership as well as to third parties; and Crapp Excavating, LLC ("Crapp Excavating"), which provided construction/excavating services to third party customers.

12.     Darrell, Carl, and Tony are the members of Crapp Farms Trucking and Crapp Excavating, each owning a one-third interest in these entities. Darrell, Carl, Tony, and Di are the

members of Crapp Land (Crapp Land is sectioned off in shares). Darrell, Carl, Tony, and Di are the current partners of Crapp Farms.

13.     All of the entities and each of us partners in our individual capacities, guaranteed the liabilities owed to our primary pre-petition secured lender, BMO Harris, N.A. ("BMO"). Each of the entities, including the partnership, are parties to a cross-collateral and cross-default agreement with BMO in which each entity agreed that BMO had granted certain credit to each or all of them as set forth in the various promissory notes between these entities and BMO and other loan documents. Each entity further agreed to cross-collateralize and cross-default the notes and all existing future loans, advances, or extensions of credit from BMO.

14.     Because of the shared obligations to BMO, our shared ownership, and that cohesion of the entities for a common business purpose, Di, Tony, Carl, and I pp Farms Partnership entered into resolutions authorizing and approving distribution of assets and liabilities from the entities to their members, and, the members being partners of Crapp Farms Partnership, contributed those assets and interests to the Partnership.

**Prepetition Loans and Security Interests**

15.     Over the years, to fund its farming operations, Crapp Farms has entered into numerous loan transactions with its primary secured lender, BMO Harris, N.A. ("BMO"). The loan documents include mortgages granting BMO a first lien on Crapp Farms' real property containing approximately 2,210 acres along with improvements. BMO also has a properly perfected first position lien on all of Crapp Farms' real estate, farm equipment, crops and other personal property and interests, as more particularly described on the Collateral Description attached hereto and incorporated herein by reference **Exhibit 1**.

16.     As of the petition date, the aggregate outstanding indebtedness on the BMO loans is approximately $28,886,000.00, consisting of numerous promissory notes and other loan transactions.

17.     As of the petition date, I estimate that the total aggregate value of Crapp Farms real and personal property assets is $29,037,959.00, itemized as follows:

| | |
|---|---|
| Real estate holdings | $21,000,000.00 |
| Livestock | $2,144,851.00 |
| Harvested Crops | $2,133,000.00 |
| Vehicles & Equipment | $3,760,108.00 |

18.     Crapp Farms is also a party to various leases for the rental of farm land, and equipment leases and financing agreements with various lenders.

**Events Leading to Chapter 11 Filing**

19.     Crapp Farms enjoyed many profitable years due to robust corn, soybean, and livestock prices.  Crapp Farms' financial difficulties began in 2013 when corn prices declined steeply largely due in part to the ethanol market crash.  Crapp Farms then continued to experience continuing financial difficulties in 2014 due to the continued decline of corn prices and the decline in beef and pork prices.

20.     Crapp Farms' financial situation grew worse in 2015 when BMO advised Crapp Farms that it would not provide crop input financing to Crapp Farms for the 2016 planting season.  As a result Crapp Farms was forced to obtain a line of credit for crop inputs for the 2016 planting season from a different lender, which line of credit carried a much higher interest rate and less favorable terms than Crapp Farms' financing arrangements with BMO.

21.    Crapp Farms' financial status became more tenuous when several of its loans with BMO matured on January 31, 2017, and BMO demanded payment in full of the matured loans. Protective advances that were promised by BMO to Crapp Farms to cover early 2017 feed and other operating expenses were never made by BMO. In addition, the proceeds from crop sales that were to be paid to Crapp Farms by their 2016 crop financing lender were not provided on a timely basis, resulting in larger accounts payable than Crapp Farms normally experiences at the end of a crop season.

22.    Since December 2016, we continue our aggressive efforts to obtain inputs for the 2017 crop season and have looked to several sources to provide the financing.  However, as the 2017 crop season has proceeded, Crapp Farms has not been able to make rental payments as required and some landlords who own property that Crapp Farms was planning to rent for the 2017 crop season terminated leases and obtained other tenants.  Other landlords have continued, as of today's date, to notify Crapp Farms that it will rent to it, most significantly, a landlord with 8,717 acres for Crapp Farms to plant.

23.    Most recently, BMO Harris issued farm products notices requiring all checks for farm products, both grain and livestock, to be payable to BMO Harris and Crapp Farms, and then has refused to allow Crapp Farms to use any proceeds for payroll, feed, animal health services, or veterinary care.

24.    The purpose of this reorganization is to allow Crapp Farms to restructure its farming operations and finances, preserve its going-concern value, preserve the jobs of the non-family employees, many of whom have been with Crapp Farms for a long period of time and are dependent upon it for their income, and to reorganize its operations to pay its secured and

unsecured creditors, many of whom support the agricultural industry in Wisconsin, particularly in Grant County.

### First Day Motions

25.    Concurrently with the filing of the Chapter 11 Case, Crapp Farms is filing several First Day Motions, consisting of both procedural motions and motions related to Crapp Farms' farming operations.  Crapp Farms believes that approval of each of the First Day Motions is a vital element in its restructuring efforts, and is necessary to ensure a smooth transition into the Chapter 11 case with minimal disruption of its farming operations.

26.    I reviewed each of the First Day Motions and I believe that the relief requested in each Motion is critical to Crapp Farms' ability to make this Chapter 11 case successful.

27.    Factual information with respect to each First Day Motion is provided below and in each First Day Motion.

28.    I participated in preparing and reviewed each of the First Day Motions (including the exhibits and schedules attached thereto) and, to the best of my knowledge, I believe that the facts set forth therein are true and correct. Such representation is based upon information and belief and through my review of various materials and information, as well as my experience and knowledge of Crapp Farms' operations and financial condition.

29.    If called upon to testify, I could and would, based on the foregoing, testify competently to the facts set forth in each of the First Day Motions.

30.    The relief sought in the First Day Motions will minimize the adverse effects of the Chapter 11 Case on Crapp Farms and will result in maximum creditor recoveries. I believe that the relief sought in each of the First Day Motions is necessary to enable Crapp Farms to operate effectively in Chapter 11 as a debtor-in-possession.

**A. The Cash Management Motion - Debtor's Motion for an Order Authorizing Use of Prepetition Bank Accounts and Business Forms.**

31.     By the Cash Management Motion, Crapp Farms seeks entry of an order authorizing the continued use of its existing bank accounts and business forms.

32.     In connection with this relief, Crapp Farms respectfully requests a waiver of certain of the operating guidelines established by the Office of the United States Trustee that require Crapp Farms to close all prepetition bank accounts, open new accounts designated as debtor-in-possession accounts, and provide new business forms and stationary.

33.     As described in detail in the Cash Management Motion, in order to lessen the disruption caused by the bankruptcy filings and maximize the value of its estate, it is vital to Crapp Farms that it be allowed to maintain its current bank accounts and related forms.

34.     Crapp Farms maintains current and accurate accounting records of daily cash transactions, and submits that maintenance of its current bank accounts is vital to prevent undue disruption to its business operations while protecting its cash for the benefit of the estate. Substantially disrupting its current cash management procedures would impair Crapp Farms' operations and ability to optimize business performance.

35.     For the foregoing reasons, Crapp Farms submits, and I believe, that the relief requested in the Cash Management Motion is in the best interest of Crapp Farms, its estate and creditors, and therefore should be approved.

**B. The Prepetition Tax Motion - Motion of the Debtor for Order Pursuant to Sections 105(a), 363(b), 541, and 507(a)(8) of the Bankruptcy Code Authorizing Payment of Prepetition Sales, Use and Other Taxes, Fees and Governmental Charges.**

36.     By the Prepetition Tax Motion, Crapp Farms requests authorization (but not direction) to pay certain taxes and fees to various U.S. taxing and licensing authorities (each an "Authority," and collectively, the "Authorities"). Crapp Farms seeks authority to pay any taxes

that were accrued prepetition but were not in fact paid or processed prepetition, or were paid prepetition in an amount less than is actually owed, or to the extent any such payments made prepetition were rejected, lost or otherwise not received in full by any Authority.

37.    Further, there may be taxes incurred or collected from sales and services provided prepetition that will come due shortly after the filing, which Crapp Farms seeks authority to pay pursuant to the Prepetition Tax Motion.

38.    Finally, to the extent that any checks, drafts, deposits or transfers issued or initiated by Crapp Farms on account of prepetition taxes have not cleared as of the Petition Date, Crapp Farms also seeks an order directing banks and other financial institutions to honor and process such payments.

39.    Crapp Farms estimates that outstanding pre-petition liabilities owing to the various taxing authorities for taxes and fees will not exceed approximately $18,000.00.

40.    Some, if not all, of the Authorities may initiate an audit of Crapp Farms if the taxes are not paid on time. Such audits would unnecessarily divert Crapp Farms' resources away from the reorganization process and result in unnecessary expenses.

41.    Moreover, if Crapp Farms does not pay such amounts in a timely manner, the Authorities may attempt to suspend Crapp Farms' operations, file liens, seek to lift the automatic stay, seek payment from Crapp Farms' directors and officers, and pursue other remedies that will materially and immediately harm the estate.

42.    Some of the outstanding tax liabilities may be for trust fund taxes that Crapp Farms collected and is holding in trust for the benefit of the Authorities. Therefore, such funds do not constitute property of the estate and could not otherwise be used by Crapp Farms or its estate.

43.    I believe that Crapp Farms' failure to pay the taxes and fees could have a material adverse impact on its ability to operate in the ordinary course of business and thus harm the reorganization, to the detriment of all interested parties, and, therefore, the motion should be approved.

**C. The Employee Wage Motion - Debtor's Motion for an Order: (i) Authorizing Payment of Employee Wage Obligations, Payroll Taxes, and Expense Reimbursements; (ii) Authorizing Maintaining and Honoring Employee Benefit Programs; (iii) and Authorizing Financial Institutions to Honor and Process Related Checks and Transfers.**

44.    Pursuant to the Employee Wage Motion, Crapp Farms seeks authority to honor and pay all employee wage obligations, and to continue to honor certain other policies, programs and benefits Crapp Farms provides to its employees in the ordinary course of business.

45.    As of the Petition Date, Crapp Farms does not believe its employees have any claims with respect to any outstanding employee wage obligations (excluding outstanding paid time off obligations) in excess of the aggregate amount of $6,000.00.

46.    Prior to the Petition Date, Crapp Farms employed approximately 54 full-time and 19 seasonal employees.  Di, Tony, Carl, and I are all employees of Crapp Farms. I believe that if Crapp Farms is unable to honor all such obligations immediately, employee morale and loyalty will be jeopardized at a time when such support is critical, particularly related to the 2017 crop planting season.  Since the Petition Date, approximately six full-time employees already chose to leave their employment with Crapp Farms.

47.    The uninterrupted continuation of Crapp Farms' business is critically dependent upon a stable work force. I believe that any significant number of employee departures or deterioration in morale at this time will immediately and substantially adversely impact the Crapp Farms' business and result in immediate and irreparable harm to the estate and all creditors.

48.     There is a real, immediate risk that if Crapp Farms is not authorized to continue to honor its pre-petition employee obligations in the ordinary course, the employees would no longer support and maintain the operations of Crapp Farms, thereby crippling its farming operations and instantly damaging the value of Crapp Farms as a going concern.

49.     Consequently, Crapp Farms strongly believes that it is critical that it be permitted to pay employees their pre-petition wages and continue with their ordinary course personnel policies, programs and procedures that were in effect prior to the Petition Date.

50.     Employees also incur various expenses in the discharge of their ordinary duties, such as travel and meal expenses. Because these expenses are incurred as part of the employees' official duties and in furtherance of Crapp Farms' business, Crapp Farms reimburses its employees in full for these expenses (the "Expense Reimbursements") in the ordinary course of business, subject to the submission of proper documentation to the appropriate accounting department.

51.     It is imperative that Crapp Farms be authorized to pay all obligations relative to the Expense Reimbursements. The failure to reimburse such expenses will present an undue hardship for employees and Crapp Farms' business.

**D.  The Cash Collateral Motion - Motion of the Debtor for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral, and (B) Granting Adequate Protection.**

52.     BMO asserts that all of Crapp Farms' depository accounts, and account receivables constitute its cash collateral as defined below (the "Cash Collateral").

53.     Crapp Farms' use of the Cash Collateral is necessary to allow Crapp Farms to continue in its operations, by allowing for the purchase of feed and fuel, payment of employees and other overhead expenses and other operational expenses. Without the use of Cash Collateral,

Crapp Farms will be unable to perform these tasks, causing Crapp Farms to cease its operations, and thus seriously eroding the value of Crapp Farms and BMO's collateral.

54.    By the Cash Collateral Motion, Crapp Farms seeks entry of an Order (a) authorizing it to obtain post-petition use of the cash claimed as collateral by BMO, including, but not limited to, cash constituting the proceeds, product or profits of any pre-petition collateral (the "Prepetition Collateral") whether received prior to or after the Petition Date (collectively, "Cash Collateral"), on an interim basis for a period through and including the date of the Final Hearing; (b) granting and providing adequate protection to the Lender; and (c) scheduling the Final Hearing.

55.    Attached to the Cash Collateral Motion is Crapp Farm's proposed budget projecting expenditures through December 31, 2017 for the livestock operation, and through October 31, 2017 for the trucking and excavating operations (collectively, the "Budgets"), and the Cash Collateral will only be used to pay for expenses that are set forth in the Budgets.

56.    Crapp Farms' need to use Cash Collateral during the course of this case is compelling. As Crapp Farms has no unencumbered funds, use of the Cash Collateral is required to fund the day-to-day expenses of Crapp Farms' operations. Unless this Court authorizes Crapp Farms' use of the Cash Collateral, Crapp Farms will be unable to pay for services and expenses necessary to preserve and maximize the value of its operations and assets.

57.    Additionally, historically and on an annual basis, the Crapp Farms holds back from sale approximately 200,000 bushels of harvested corn from its cropping operations to feed its livestock. Crapp Farms also sets aside from sale shelled corn, hay, corn silage, earlage, and haylage from its cropping operations for use as feed to its livestock (collective, the "Corn Silage").

58.    Most significantly, Crapp Farms has approximately 4,622 hogs and approximately 2,763 head of cattle.  In order to ensure the health of this livestock, Crapp Farms must regularly purchase feed and feed supplements, bedding, fuel (particularly for the hog operation to keep the piglets warm), animal health pharmaceuticals, and veterinary services.

59.    In order to specifically maintain its livestock operations, Crapp Farms would also need to be allowed to hold back from sale approximately 90,000 bushels of harvested corn, and be allowed to retain and use, as necessary, the harvested corn and the Corn Silage as feed for its livestock.  I anticipate that over a sixty-day period, it will use approximately 34,000 bushels of the harvested corn.

60.    There is a real, immediate risk that if Crapp Farms is not authorized to continue to pay these expenses in the ordinary course, the livestock's condition will rapidly deteriorate, instantly damaging the value of Crapp Farms' interest in said livestock.

61.    Consequently, Crapp Farms strongly believes that it is critical that it be permitted to pay these expenses in the ordinary course to ensure its ability to effectively reorganize and protect not only its interest in the livestock, but also of the interests of BMO.

62.    Therefore, authorization to use the Cash Collateral, pending the Final Hearing, is in the best interests of Crapp Farms' estate and creditors.

## CONCLUSION

63.    For the reasons stated herein and in each of the First Day Motions filed concurrently or in connection with the commencement of this Chapter 11 Case, I respectfully request that each of the First Day Motions be granted in their entirety, together with such other relief as this Court deems just and proper.

I certify under penalty of perjury that, based upon my knowledge, information and belief

as set forth in this Declaration, the foregoing is true and correct.

Dated: May _____, 2017.

_____
Darrell C. Crapp
Crapp Farms Partnership

Subscribed and sworn to before me
this _____ day of May, 2017.

_____
Notary Public, State of Wisconsin
My commission is: _____

I certify under penalty of perjury that, based upon my knowledge, information and belief

as set forth in this Declaration, the foregoing is true and correct.

Dated: May ___2___, 2017.

Darrell C. Crapp
Crapp Farms Partnership

Subscribed and sworn to before me
this ___2___ day of May, 2017.

Notary Public, State of Wisconsin
My commission is: ~~is:~~ *permanent*

14

Collateral Description

Real Property Owned by Crapp Land LLC

See Exhibit A

Personal Property Owned by Crapp Farms Partnership

All equipment, fixtures, farm products including, but not limited to, all livestock (including the born and unborn young of all livestock), crops, livestock feed and farm supplies, timber to be cut, inventory, documents, general intangibles, accounts, deposit accounts (unless a security interest would render a nontaxable account taxable), contract rights, chattel paper, instruments, letter of credit rights and investment property, now owned or hereafter acquired by Debtor (or by Debtor with spouse).

Personal Property Owned by Crapp Excavating LLC

All equipment, fixtures, inventory, documents, general intangibles, accounts, deposit accounts (unless a security interest would render a nontaxable account taxable), contract rights, chattel paper, patents, trademarks and copyrights (and the goodwill associated with and registrations and licenses of any of them), instruments, letter of credit rights and investment property, now owned or hereafter acquired by Debtor (or by Debtor with spouse), and all additions and accessions to, all spare and repair parts, special tools, equipment and replacements for, software used in, all returned or repossessed goods the sale of which gave rise to and all proceeds, supporting obligations and products of the foregoing ("Collateral"), wherever located, to secure all debts, obligations and liabilities to Lender arising out of credit previously granted, credit contemporaneously granted and credit granted in the future by Lender to any Debtor, or any Borrower, to any of them and another, or to another guaranteed or endorsed by any of them ("Obligations").

Personal Property Owned by Crapp Farms Trucking LLC

All equipment, fixtures, inventory, documents, general intangibles, accounts, deposit accounts (unless a security interest would render a nontaxable account taxable), contract rights, chattel paper, patents, trademarks and copyrights (and the goodwill associated with and registrations and licenses of any of them), instruments, letter of credit rights and investment property, now owned or hereafter acquired by Debtor (or by Debtor with spouse), and all additions and accessions to, all spare and repair parts, special tools, equipment and replacements for, software used in, all returned or repossessed goods the

L:\DOCS\000021\000328\AGREE\32K5543.DOCX
I106131558



sale of which gave rise to and all proceeds, supporting obligations and products of the foregoing ("Collateral"), wherever located, to secure all debts, obligations and liabilities to Lender arising out of credit previously granted, credit contemporaneously granted and credit granted in the future by Lender to any Debtor, or any Borrower, to any of them and another, or to another guaranteed or endorsed by any of them ("Obligations").

<u>EXHIBIT A TO ATTACHMENT B TO CROSS COLLATERAL AND CROSS DEFAULT
AGREEMENT</u>

Legal Description - 1721T

All the following described land situated in Section Thirteen (13), Township Three (3)
North, Range Three (3) West of the 4th P.M., lying North of (new) County Hwy. "B":

The West Half (W.1/2) of the Northeast Quarter (N.E.1/4) and the East Half (E.1/2) of
the Northwest Quarter (N.W.1/4) of Section Thirteen (13), Township Three (3) North,
Range Three (3) West of the 4th P.M., Grant County, Wisconsin.

Also including the Southeast Quarter (S.E.1/4) of the Northeast Quarter (N.E.1/4)
EXCEPT the N.1/2 of the N.E.1/4 of the S.E.1/4 of the N.E.1/4 of said Section 13.

Also including the East Half (E.1/2) of the Southeast Quarter (S.E.1/4) and that part of
the Northeast Quarter (N.E.1/4) of the Southwest Quarter (S.W.1/4) and the Northwest
Quarter (N.W.1/4) of the Southeast Quarter (S.E.1/4) of said Section 13 described as
follows:

Commence at a point which is 5.50 chains East of the Northwest corner of the N.W.1/4
of the S.E.l/4 of said Section 13; thence running West 13.55 chains; thence South 6.14
chains; thence North 74° 30' East 14.34 chains; thence in a Northwesterly direction 2.3
chains to the place of beginning.

EXCEPTING therefrom the lands conveyed to Grant County, Wisconsin, by Warranty
Deed recorded in Volume 468 of Records, page 512.

Also EXCEPTING the lands conveyed to Robert L. Schmelz and Linda L. Schmelz,
husband and wife, by Warranty Deed recorded in Volume 501 of Records, page 8.

Also EXCEPTING therefrom the land described below:

A parcel of land located in said Section 13, said parcel being more particularly described
as follows:

Commencing at the East Quarter corner of said Section 13; thence North 89° 48' 31"
West 1363.50 feet along the East-West Quarter line of said Section 13; thence South 81°
23' 38" West 428.33 feet to a 3/4" rebar on the Northerly R.O.W. of C.T.H. "B", said
rebar marking the point of beginning; thence South 81° 23' 38" West 692.77 feet along

said R.O.W. to a 3/4" rebar; thence Westerly 408.39 feet on the arc of a curve concave Northerly having a radius of 1348.96 feet and a long chord which bears North 82° 56' 52" West 406.83 feet to a 3/4" rebar on said R.O.W.; thence North 71° 53' 15" West 240.07 feet along said R.O.W. to a 3/4" rebar; thence North 37° 09' 58" West 74.85 feet along said R.O.W. to a 3/4" rebar; thence North 85° 57' 05" West 88.84 feet along said R.O.W. to a 1" iron pipe marking the Southeast corner of that property described in Volume 501, Page 8, Document No. 444112, Grant County Registry, Lancaster, Wisconsin; thence North 00° 39' 55" West 262.65 feet to a 1" iron pipe marking the Northeast corner of said property; thence South 86° 39' 05" West 267.54 feet to a 3/4" rebar marking the Northwest corner of said property; thence North 00° 38' 12" East 553.19 feet to a 3/4" rebar; thence North 85° 18' 55" East 572.09 feet to a 3/4" rebar; thence South 64° 14' 32" East 365.25 feet to a 3/4" rebar; thence South 30° 32' 17" East 646.62 feet to a 3/4" rebar; thence North 60° 16' 21" East 206.87 feet to a 3/4" rebar; thence South 16° 51' 28" East 164.34 feet to a 3/4" rebar; thence South 81° 42' 50" East 248.01 feet to a 3/4" rebar; thence South 06° 23' 46" East 128.43 feet to the point of beginning.

EXCEPT a parcel of land conveyed to Renee R. Winkler, a single individual, by Warranty Deed recorded in Volume 1001 of Records, page 72 described as follows: Part of the Northeast Quarter (N.E.1/4) of the Southwest Quarter (S.W.1/4) of Section Thirteen (13), Township Three (3) North, Range Three (3) West of the 4th P.M., Potosi Township, Grant County, Wisconsin, described as follows:

Commencing at the East Quarter corner of said Section 13; thence North 89° 38' 38" West 2633.24 feet along the East-West Quarter line to the center of said Section 13; thence North 89° 38' 38" West 531.30 feet along the East-West Quarter line of said Section 13; thence South 00° 21' 22" West 161.94 feet along a line of that property as described in Volume 480 of Records, Page 141, Document #432173; thence South 74° 17' 59" East 18.35 feet along the Southerly right of way of C.T.H. "B" to the point of beginning; thence South 01° 16' 26" East 192.14 feet; thence North 89° 07' 33" East 239.58 feet to the Westerly right of way of Old "B"; thence 33.27 feet on the arc of a curve to the left having a radius of 601.61 feet and a long chord bearing North 32° 48' 07" East 33.26 feet along said right of way; thence North 23° 42' 54" West 107.31 feet along a line of said right of way; thence North 74° 06' 57" West 227.37 feet along the Southerly right of way of C.T.H. "B" to the point of beginning.

Tax Parcel Nos.

     052-00247-0000
     052-00248-0010
     052-00251-0000

052-00253-0000
052-00257-0010
052-00277-0010

Legal Description - 3328T

The Northwest Quarter (N.W.1/4) of the Northeast Quarter (N.E.1/4) of Section Six (6) and the East Half (E. $^1$/2) of the Northwest Quarter (N.W.1/4) of said Section Six (6), EXCEPTING 24 acres off of the West side thereof, all in Township Three (3) North, Range Two (2) West of the 4th P.M., Grant County, Wisconsin.

EXCEPT part of the Southeast Quarter (S.E.1/4) of the Northwest Quarter (N.W.1/4) of Section Six (6), Township Three (3) North, Range Two (2) West of the 4th P.M., Harrison Township, Grant County, Wisconsin, described as follows:

Commencing at the West Quarter corner of said Section; thence South 89° 45' 07" East 1558.18 feet along the South line of the N.W.1/4 of said Section to the point of beginning; thence South 89° 45' 07" East 959.44 feet along the South line of said N.W.1/4 to the Southeast corner thereof; thence North 00° 21' 00" West 755.68 feet along the East line of the N.W.1/4 of said Section; thence North 64° 57' 45" West 1061.79 feet to the East line of the West 24 acres of the E.1/2 of the N.W.1/4 of said Section; thence South 00° 20' 38" East 1200.89 feet along said East line to the point of beginning. Also EXCEPT a parcel of land conveyed to Thomas J. Sahr and Randy L. Sahr, husband and wife, as survivorship marital property, by Warranty Deed recorded in Volume 922 of Records, page 797 described as follows:

A parcel of land located in the Northwest Quarter (N.W.1/4) of the Northeast Quarter (N.E.1/4) of Section Six (6), Township Three (3) North, Range Two (2) West of the 4th P.M., Grant County, Wisconsin, said parcel being described as follows:

Commencing at the North Quarter corner of said Section 6; thence South 88° 37' 50" East 1316.37 feet along the North line of said Section 6 to the Northeast corner of the N.W.1/4 of the N.E.1/4 thereof; thence South 00° 24' 48" West 155.42 feet along the East line of the N.W.1/4 of the N.E.1/4 of said Section 6 to the point of beginning; thence South 79° 40' 32" West 162.14 feet to a No. 6 rebar; thence South 30° 17' 10" West 365.83 feet to a No. 6 rebar; thence North 80° 53' 13" West 178.42 feet to a No. 6 rebar; thence South 86° 23' 01" West 22.13 feet to a No. 6 rebar; thence South 44° 33' 12" West 198.02 feet to a No. 6 rebar; thence South 15° 57' 30" West 38.44 feet to a No. 6 rebar; thence South 09° 33' 10" West 141.58 feet to a No. 6 rebar; thence South 16° 58' 17" West 95.01 feet to a No. 6 rebar; thence South 19° 30' 32" West 346.44 feet to a point in the centerline of Red Dog Road; thence South 67° 24' 20" East 22.51 feet to a point in said centerline; thence North

21° 15' 19" East 207.22 feet to a No. 6 rebar; thence South 69° 52' 25" East 320.21 feet to a No. 6 rebar; thence North 45° 14' 20" East 410.56 feet to a No. 6 rebar; thence South 82° 20' 00" East 166.95 feet to the East line of the N.W.1/4 of the N.E.1/4 of said Section 6; thence North 00° 24' 48" East 712.11 feet along said East line to the point of beginning. Also including the South Half (S.1/2) of the Southwest Quarter (S.W.1/4) of Section Thirty-one (31), Township Four (4) North, Range Two (2) West of the 4th P.M., Grant County, Wisconsin; and 70 acres off the North end of the West Half (W.1/2) of the Southeast Quarter (S.E.1/4); and 30 acres off the North end of the Southeast Quarter (S.E.1/4) of the Southeast Quarter (S.E.1/4) of Section Thirty-six (36), Township Four (4) North, Range Three (3) West of the 4th P.M., Grant County, Wisconsin.

EXCEPT that parcel of land conveyed to Ivan Yoose by Quit Claim Deed recorded in Volume 647 of Records, page 422 described as follows: A triangular parcel in the Southwest corner of the S.W.1/4 of Section 31, T4N, R2W, South of the public highway, in the town of Ellenboro, Grant County, Wisconsin.

Tax Parcel Nos.

> 020-00113-0000
> 020-00116-0000
> 014-00674-0000
> 014-00675-0000
> 056-00822-0000
> 056-00823-0000
> 056-00826-0000
> 020-00121-0010

Legal Description - 3479T, 3480T and 3481T

The South Three Quarters (S.3/4) of the West Half (W.1/2) of Section One (1) EXCEPTING therefrom lands described in Volume P of Deeds on page 625, Volume 68 of Deeds on page 452, Volume 662 of Records on page 288 as Document #533977.

Also EXCEPTING lands designated as Lot 1 on Certified Survey Map #935, as Document #648908. Also EXCEPTING therefrom lands conveyed in Volume 581 of Records on page 589 as Document #489907, described as follows, to-wit: Part of the N.W.1/4 of the S.W.1/4 of said Section 1 described as follows:

Beginning at a point which is located 310.76 feet South and 366.00 feet East of the Northwest corner of the S.W.1/4 of said Section 1; thence North 72° 00' 00" East 439.81

feet to the Westerly right-of-way of State Trunk Highway #35; thence South 18° 20' 36"
East 46.16 feet along said right-of-way; thence South 62° 43' 04" West 144.80 feet;
thence South 11° 23' 34" West 108.57 feet; thence South 85° 14' 24" West 116.64 feet;
thence South 72° 00' 00" West 141.62 feet; thence North 13° 19' 36" West 137.84 feet to
the point of beginning.

Also including the Southeast Quarter (S.E.1/4) of the Northeast Quarter (N.E.1/4) and the
South Half (S.1/2) of the Southeast Quarter (S.E.1/4) of Section Two (2).

Also including the Northwest Quarter (N.W.1/4) of the Northwest Quarter (N.W.1/4) of
Section Twelve (12), all of the above described lands being in Township Four (4) North,
Range Five (5) West of the 4th P.M., Grant County, Wisconsin.

EXCEPT a parcel of land conveyed to Patrick J. Esser and Kimberly J. Esser, husband
and wife, as survivorship marital property, by Warranty Deed recorded in Volume 962 of
Records, page 325 described as follows:

Lot One (1) of Certified Survey Map #950 recorded in Volume 8 of Certified Survey
Maps, page 13, Document #650906 on February 27, 2003, and being located in the
N.W.1/4 of the S.W.1/4 of Section 1, T4N, R5W of the 4th P.M., Beetown Township,
Grant County, Wisconsin.

Also EXCEPT a parcel of land conveyed to Ruby E. Marshall, a single individual, by
Warranty Deed recorded in Volume 1099 of Records, page 547 described as follows:
Part of the N.E.1/4 of the S.W.1/4 of Section 1, T4N, R5W of the 4th P.M., Beetown
Township, Grant County, Wisconsin, described as follows:

Commencing at the South Quarter corner of said Section; thence North 01° 35' 42" West
755.03 feet along the East line of the S.W.1/4 of said Section; thence North 42° 59' 13"
West 1139.67 feet along a line of Lot 1 of Certified Survey Map #935, recorded in
Volume 7 of Certified Survey Maps, on Pages 231-232 as Document #648908, Grant
County Registry, to the point of beginning; thence South 71° 00' 00" West 149.85 feet
along a line of said Lot 1; thence North 27° 01' 33" West 107.30 feet along a line of said
Lot 1; thence North 08° 14' 01" East 86.13 feet along a line of said Lot 1; thence South
53° 26' 55" East 221.72 feet to the point of beginning.

Tax Parcel Nos.

Case No. 3479:

002-00906-0000
002-00925-0000

Case No. 3480:

002-00911-0000
002-00914-0000
002-00936-0000
002-00937-0000

Case No. 3481:

002-00907-0000
002-00908-0010
002-00909-0000
002-00915-0000
002-00962-0000

Legal Description - 3549T

The West Half (W.1/2) of the Northwest Quarter (N.W.1/4) of Section Thirteen (13); the East Half (E.1/2) of the Northeast Quarter (N.E.1/4) of Section Fourteen (14), Township Three (3) North, Range Three (3) West of the 4th P.M., Grant County, Wisconsin.

EXCEPT that parcel conveyed to Grant County, Wisconsin, by Highway Deed recorded in Volume 468 of Records, page 515, in the office of Register of Deeds for Grant County, Wisconsin.

Also EXCEPT a parcel of land conveyed to Mary Ann Flesch and Martin James Placko, as joint tenants, by Quit Claim Deed recorded in Volume 1067 of Records, page 178 and described as follows:

Part of the S.E.1/4 of the N.E.1/4 of Section 14, T3N, R3W of the 4th P.M., Potosi Township, Grant County, Wisconsin, described as follows:

Commencing at the East Quarter corner of said Section; thence North 00° 09' 50" West 274.55 feet along the East line of said Section to the point of beginning; thence North 88° 56' 13" West 148.57 feet to a No. 6 rebar; thence North 00° 16' 50" East 42.00 feet to a No. 6 rebar; thence North 88° 56' 13" West 42.50 feet to a No. 6 rebar; thence North 00° 16' 50" East 173.00 feet to a No. 6 rebar; thence South 88° 56' 13" East 31.00 feet to a No. 6 rebar; thence North 00° 16' 50" East 64.00 feet to a No. 6 rebar; thence South 88° 56' 13" East 157.90 feet to the East line of said Section; thence South 00° 09' 50" East 279.04 feet along said East line to the point of beginning.

Tax Parcel Nos.

>
> 052-00254-0000
> 052-00255-0000
> 052-00285-0000
> 052-00288-0000
> 052-00254-0010

## Legal Description - 5958T

The East 10 acres of Southeast Quarter (S.E.1/4) of Northwest Quarter (N.W.1/4) of Section Three (3); also the N.E.1/4 of Section Three (3), all in Township Three (3) North, Range Three (3) West of the 4th P.M., Grant County, Wisconsin.

EXCEPTING therefrom a parcel of land in the S.E.1/4 of the N.E.1/4 of said Section 3 described as follows, to-wit:

Beginning at the East Quarter corner of said Section 3; thence North 01° 36' 07" East 472.43 feet along the East line of said Section 3; thence North 88° 06' 38" West 594.59 feet; thence South 01° 36' 07" West 480.00 feet to the East-West Quarter line of said Section 3; thence South 88° 50' 25" East 594.60 feet along said East-West Quarter line to the point of beginning.

Also EXCEPT a parcel of land conveyed to Darrell C. Crapp and Diana Crapp, husband and wife, by Warranty Deed recorded in Volume 976 of Records, page 290 described as follows:

Part of the Northeast Quarter (N.E.1/4) of the Northeast Quarter (N.E.1/4) and the Northwest Quarter (N.W.1/4) of the Northeast Quarter (N.E.1/4) of Section Three (3), Township Three (3) North, Range Three (3) West of the 4th P.M., Grant County, Wisconsin, said parcel being described as follows:

Commencing at the Northeast corner of said Section 3; thence South 01° 36' 07" West 572.04 feet along the East line of said Section 3; thence North 85° 13' 45" West 685.35 feet to the point of beginning; thence North 85° 13' 45" West 189.09 feet; thence South 32° 15' 53" West 143.46 feet; thence South 86° 12' 12" West 153.81 feet; thence North 87° 45' 47" West 261.49 feet; thence South 00° 10' 28" East 398.88 feet; thence South 86° 46' 45" East 645.09 feet; thence North 03° 39' 01" East 541.79 feet to the point of beginning.

Also EXCEPT a parcel of land conveyed to Karie Crapp by Warranty Deed recorded in Volume 976 of Records, page 292 described as follows:

Part of the Southeast Quarter (S.E.1/4) of the Northwest Quarter (N.W.1/4), the Southwest Quarter (S.W.1/4) of the Northeast Quarter (N.E.1/4) and the Southeast Quarter (S.E.1/4) of the Northeast Quarter (N.E.1/4) of Section Three (3), Township Three (3) North, Range Three (3) West, 4th P.M., Potosi Township, Grant County, Wisconsin, said parcel being described as follows:

Commencing at the E.1/4 corner of said Section 3; thence North 88° 50' 25" West 694.60 feet along the East-West Quarter line of said Section 3 to the point of beginning; thence North 01° 36' 07" East 480.00 feet along the West line of that property surveyed by Larry Austin dated 6-7-96; thence North 87° 13' 11" West 634.96 feet; thence North 02° 55' 50" East 8.69 feet; thence South 89° 58' 28" West 372.41 feet; thence North 85° 43' 07" West 883.85 feet; thence North 23° 08' 18" West 329.75 feet; thence North 87° 38' 37" West 351.11 feet to a point on the West line of the East 10 acres of the S.E.1/4 of the N.W.1/4; thence South 01° 50' 17" West 854.99 feet along said West line of the East 10 acres of the S.E.1/4 of the N.W.1/4 to the Southwest corner thereof; thence South 88° 50' 25" East 2382.45 feet along the East-West line of said Section 3 to the point of beginning.

Tax Parcel Nos.

     052-00042-0000
     052-00043-0000
     052-00044-0000
     052-00045-0000
     052-00053-0000

Legal Description - 8166T

The East Half (E.1/2) of the Southwest Quarter (S.W.1/4) and the Southwest Quarter (S.W.1/4) of the Southwest Quarter (S.W.1/4) of Section Two (2), Township Three (3) North, Range Three (3) West of the 4th P.M., Grant County, Wisconsin.

Tax Parcel Nos.

     052-00034-0000
     052-00036-0000
     052-00037-0000

Legal Description - 8167T

The West Half (W.1/2) of the Northwest Quarter (N.W.1/4) of Section Fourteen (14); the South Half (S.1/2) of the Southwest Quarter (S.W.1/4) and the Northwest Quarter (N.W.1/4) of the Southwest Quarter (S.W.1/4) of Section Eleven (11), all in Township Three (3) North, Range Three (3) West of the 4th P.M., Grant County, Wisconsin.

EXCEPT a parcel of land located in the N.W.1/4 of the S.W.1/4 of Section 11, T3N, R3W, Potosi Township, Grant County, Wisconsin, as described as Lot 1 in Certified Survey Map No. 804 recorded in the office of the Register of Deeds for Grant County, Wisconsin, in Volume 6 of Certified Survey Maps on Page 193, Document #631636.

EXCEPT a parcel of land conveyed to Carl D. Crapp by Warranty Deed recorded in Volume 976 of Records, page 294 described as follows:

Part of the N.W.1/4 of the S.W.1/4 of Section 11, T3N, R3W of the 4th P.M., Potosi Township, Grant County, Wisconsin, containing 3.12 acres, more or less, and being described as follows:

Commencing at the W.1/4 corner of said Section 11; thence South 00° 04' 46" West 588.40 feet along the West line of said Section to the point of beginning; thence South 00° 04' 46" West 285.73 feet along the West line of said Section; thence North 83° 17' 52" East 296.21 feet; thence South 89° 00' 12" East 320.60 feet; thence North 03° 48' 06" East 173.00 feet; thence North 82° 20' 41" West 631.43 feet to the point of beginning.

Tax Parcel Nos.

    052-00223-0000
    052-00224-0000
    052-00225-0000
    052-00290-0000
    052-00291-0000

Legal Description - 8776T

The West Half (W.1/2) of the Northwest Quarter (N.W.1/4) and the Northwest Quarter (N.W.1/4) of the Southwest Quarter (S.W.1/4) of Section Two (2); also the Northeast Quarter (N.E.1/4) of the Northwest Quarter (N.W.1/4) of Section Three (3), all in Township Three (3) North, Range Three (3) West of the 4th P.M., Grant County, Wisconsin.

EXCEPT a parcel of land located in the W.1/2 of Section 2, T3N, R3W of the 4th P.M., Grant County, Wisconsin, described as follows:

Commencing at the West Quarter corner of said Section 2, said corner being the point of beginning; thence North 01° 36' 07" East 2004.41 feet along the West line of said Section 2; thence South 88° 36' 49" East 425.83 feet; thence South 01° 01' 13" West 582.24 feet; thence South 27° 22' 53" East 252.85 feet; thence South 05° 09' 08" West 132.32 feet; thence South 31° 48' 54" West 421.06 feet; thence South 11° 59' 09" West 305.06 feet; thence South 01° 23' 48" West 557.90 feet; thence South 88° 36' 30" East 858.39 feet; thence South 56° 26' 07" East 220.38 feet to the East line of the N.W.1/4 of the S.W.1/4; thence South 01° 34' 41" West 412.91 feet along said East line; thence North 88° 07' 12" West 1326.72 feet to the West line of said Section 2; thence North 01° 36' 07" East 671.25 feet along said West line to the point of beginning.

Tax Parcel Nos.

    052-00031-0000
    052-00032-0000
    052-00035-0000
    052-00047-0000

Legal Description - 8870TR

A parcel of land located in the Northwest Quarter (N.W.1/4) of the Northwest Quarter (N.W.1/4), the Southwest Quarter (S.W.1/4) of the Northwest Quarter (N.W.1/4), the Northwest Quarter (N.W.1/4) of the Southwest Quarter (S.W.1/4) and the Southwest Quarter (S.W.1/4) of the Southwest Quarter (S.W.1/4) of Section Twenty-three (23), Township Three (3) North, Range Three (3) West of the 4th P.M., Potosi Township, Grant County, Wisconsin, described as follows:

Commencing at the West Quarter corner of said Section, said corner being the point of beginning; thence South 00° 04' 41" East 1982.07 feet along the West line of said Section to the Southwest corner of the N.1/2 of the S.W.1/4 of the S.W.1/4 thereof; thence South 89° 03' 03" East 1336.20 feet along the South line of the N.1/2 of the S.W.1/4 of said S.W.1/4 to the Southeast corner thereof; thence North 00° 02' 00" East 1992.00 feet along the East line of the W.1/2 of said S.W.1/4 to the Northeast corner thereof; thence North 89° 28' 41" West 18.69 feet along the North line of the N.W.1/4 of the S.W.1/4 of said Section to the Southeast corner of that property as described in Parcel 2 of Volume 1088, Page 757, recorded as Document #685369, Grant County Registry; thence North 00° 08' 46" East 1288.54 feet along the East line of said property described in Volume 1088, Page 757 to the Northeast corner thereof; thence North 83° 38' 32" West 1329.08 feet along the North line of said property described in Volume 1088, Page 757 to the Northwest corner thereof; thence South 00° 08' 38" West 1423.68 feet along the West line of said Section 23 to the point of beginning.

Tax Parcel ID Nos.

    052-00488-0010
    052-00487-0010
    052-00491-0000
    052-00492-0000

Legal Description - 10977T

The Southwest Quarter (S.W.1/4) of Section Thirty-one (31), EXCEPTING therefrom lands used for cemetery purposes described as follows, to-wit: Beginning at a point on the West boundary line of said Section 31, which is 3.59 chains South from the Quarter post on the West side of said Section (var. 11°); thence East 12 1/2 rods; thence South 16

rods; thence West 12 1/2 rods to the West boundary line of said Section; thence North 16 rods on said Section line to the place of beginning.

Also including that part of the South Half (S.1/2) of the Northwest Quarter (N.W.1/4) of said Section 31 described as follows, to-wit:

Beginning at the center of said Section 31; thence West 160 rods, more or less, to the West line of said Section; thence North 53 rods 7 links; thence East 40 rods; thence North 10.56 inches; thence East 120 rods, more or less, to a point 53 1/3 rods North of the place of beginning; thence South to the place of beginning.

All of said lands being in Township Four (4) North, Range Three (3) West of the 4th P.M., Grant County, Wisconsin.

EXCEPTING therefrom lands described in Warranty Deed recorded in the office of the Register of Deeds for Grant County, Wisconsin, in Volume 448 of Records, Page 335, as Document No. 417727.

Also EXCEPTING therefrom the lands described in Quit Claim Deed recorded in said Register's office in Volume 771 of Records, Page 269, as Document No. 585521.

Also EXCEPTING therefrom the lands described in Warranty Deed recorded in said Register's office in Volume 834 of Records, Page 818, as Document No. 612843.

Tax Parcel Nos.

    056-00698-0000
    056-00700-0000
    056-00702-0000
    056-00703-0000
    056-00706-0000
    056-00708-0000

Legal Description - 11143T

TRACT 4 DESCRIPTION:

Part of the Southwest Quarter (SW 1/4) of the Northeast Quarter (NE 1/4) and the Northwest Quarter (NW 1/4) of the Southeast Quarter (SE 1/4) of Section Thirteen (13),

Township Three (3) North, Range Three (3) West of the 4th P.M., Potosi Township, Grant County, Wisconsin, described as follows:

Commencing at the East Quarter corner of said Section 13; thence North 89° 48' 31" West 1363.50 feet along the East-West Quarter line of said Section; thence South 81° 23' 38" West 428.33 feet to a 3/4" diameter rebar marking the point of beginning; thence North 06° 23' 46" West 128.43 feet along a line of a previous survey by Larry Austin dated February 24, 1998 to a 3/4" diameter rebar; thence North 81° 42' 50" West 248.01 feet along a line of said survey to a 3/4" diameter rebar; thence North 16° 51' 28" West 164.34 feet along a line of said survey to a 3/4" diameter rebar; thence South 60° 16' 21" West 206.87 feet along a line of said survey to a 3/4" diameter rebar; thence South 00° 48' 22" East 291.19 feet to the Northerly right of way of County Highway "B"; thence North 81° 23' 38" East 488.44 feet along said right of way to the point of beginning.

TRACT 5 DESCRIPTION:

Part of the Southeast Quarter (SE 1/4) of the Northwest Quarter (NW 1/4) and the Southwest Quarter (SW 1/4) of the Northeast Quarter (NE 1/4) of Section Thirteen (13), Township Three (3) North, Range Three (3) West of the 4th P.M., Potosi Township, Grant County, Wisconsin, described as follows:

Commencing at the East Quarter corner of said Section 13; thence North 89° 48' 31" West 1363.50 feet along the East-West Quarter line of said Section; thence South 81° 23' 38" West 428.33 feet to a 3/4" diameter rebar; thence North 06° 23' 46" West 128.43 feet along a line of a previous survey by Larry Austin dated February 24, 1998 to a 3/4" diameter rebar; thence North 81° 42' 50" West 248.01 feet along a line of said survey to a 3/4" diameter rebar; thence North 16° 51' 28" West 164.34 feet along a line of said survey to a 3/4" diameter rebar; thence South 60° 16' 21" West 206.87 feet along a line of said survey to a 3/4" diameter rebar; thence North 30° 32' 17" West 210.96 feet along a line of said survey to a 3/4" diameter rebar marking the point of beginning; thence North 30° 32' 17" West 435.66 feet along a line of said survey to a 3/4" diameter rebar; thence North 64° 14' 32" West 365.25 feet along a line of said survey to a 3/4" diameter rebar; thence South 85° 18' 55" West 572.09 feet along a line of said survey to a 3/4" diameter rebar; thence South 00° 38' 12" West 553.19 feet along a line of said survey to a 3/4" diameter rebar; thence North 86° 39' 05" East 267.54 feet; thence North 86° 39' 05" East 861.03 feet to the point of beginning.

Tax Parcel Nos.

    052-00257-0000
    052-00277-0000

Legal Description - 12954TR

A triangular piece of approximately .5 acres situated in the Northeast corner of the South Half (S.1/2) of the Southeast Quarter (S.E.1/4) of the Northeast Quarter (N.E.1/4) of Section One (1), Township Three (3) North, Range Three (3) West of the 4th P.M., Grant County, Wisconsin.

Also including the North Half (N.1/2) of the Northeast Quarter (N.E.1/4); the North Half (N.1/2) of the Southwest Quarter (S.W.1/4) of the Northeast Quarter (N.E.1/4); the North Half (N.1/2) of the Southeast Quarter (S.E.1/4) of the Northeast Quarter (N.E.1/4), all in Section One (1), Township Three (3) North, Range Three (3) West of the 4th P.M., Grant County, Wisconsin.

Also including the West Half (W.1/2) of the Northwest Quarter (N.W.1/4) and 24 acres off the West side of the East Half (E.1/2) of the Northwest Quarter (N.W.1/4) of Section Six (6), Township Three (3) North, Range Two (2) West of the 4th P.M., Grant County, Wisconsin. Also including 20 acres off the South side of the Southeast Quarter (S.E.1/4) of Section Thirty-six (36), being that part thereof lying South of the public highway in Township Four (4) North, Range Three (3) West of the 4th P.M., Grant County, Wisconsin.

EXCEPTING THEREFROM a triangular parcel approximately .5 acres in area located in the Southwest corner of the West Half (W.1/2) of the Northwest Quarter (N.W.1/4) of Section Six (6), Township Three (3) North, Range Two (2) West of the 4th P.M., Grant County, Wisconsin.

Also including a triangular parcel in the Southwest corner of the Southwest Quarter (S.W.1/4) of Section Thirty-one (31), Township Four (4) North, Range Two (2) West of the 4th P.M., Grant County, Wisconsin, lying South of the public highway.

Tax Parcel Nos.

    020-00117-0000        052-00002-0000
    020-00118-0000        052-00003-0000

020-00119-0000    052-00005-0000
020-00120-0000    052-00006-0010
014-00674-0010    056-00824-0000
052-00001-0000    056-00825-0000

Legal Description - 13267T

The Northeast Quarter (N.E.1/4) of Section Twenty-three (23), Township Four (4) North, Range Three (3) West of the 4th P.M., Grant County, Wisconsin.

EXCEPTING therefrom a parcel of land conveyed to the State of Wisconsin, Department of Transportation by Warranty Deed recorded in Volume 666 of Records, page 982, as Document No. 536599.

Tax Parcel Nos.

056-00522-0000
056-00523-0000
056-00524-0000
056-00521-0000

Legal Description - 13837T

Part of the Northeast Quarter (N.E.1/4) of the Northeast Quarter (N.E.1/4) of Section Two (2), Township Four (4) North, Range Five (5) West of the 4th P.M., Beetown Township, Grant County, Wisconsin, described as follows:

Commencing at the Northeast corner of said Section 2, being the point of beginning; thence South 02° 37' 53" East 628.60 feet along the East line of said Section; thence South 89° 28' 25" West 356.02 feet; thence South 00° 16' 20" East 317.59 feet; thence South 24° 13' 17" East 281.51 feet; thence South 05° 46' 06" East 305.84 feet to a point on the South line of the N.E.1/4 of the N.E.1/4 of said Section 2; thence South 89° 49' 58" West 1076.19 feet along said South line to the Southwest corner thereof; thence North 02° 39' 53" West 1513.03 feet along the West line of the N.E.1/4 of the N.E.1/4 of said Section 2 to the Northwest corner thereof; thence North 89° 55' 58" East 1325.95 feet along the North line of said Section 2 to the point of beginning.

Tax Parcel No.

002-00922-0010