UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

*In re:*

Crapp Farms Partnership,

    Debtor.

Case No. 17-11601
Chapter 11

**AGREED INTERIM ORDER:**
**(1) AUTHORIZING DEBTOR'S LIMITED USE OF CASH COLLATERAL; AND**
**(2) GRANTING BMO HARRIS BANK, N.A. RELIEF FROM THE AUTOMATIC STAY**

Based upon an agreement by and between Crapp Farms Partnership, the debtor herein (the "Debtor" or "Partnership"); BMO Harris Bank, N.A., a secured creditor and interested party herein ("BMO"); and the Office of the United States Trustee (the "UST"), regarding Debtor's Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral and (B) Granting Adequate Protection filed as Docket Entry Number 8 (the "Cash Collateral Motion"); BMO's Motion for Relief from Stay or, in the Alternative, to Dismiss Debtor's Chapter 11 Bankruptcy (the "Relief from Stay Motion"); and the Debtor's Motion for an Order Authorizing Use of Prepetition Bank Accounts and Business Forms filed as Docket Entry Number 10 (the "Cash Management

Motion"); the Debtor, BMO, and the UST have stipulated and agreed as follows.

A. Prior to the filing of the Debtor's bankruptcy petition on May 3, 2017 (the "Petition Date"), BMO held a perfected security interest in the personal property of the Debtor, as described in the security agreements executed by the Debtor and related entities prepetition.

B. Prior to the filing of the Debtor's bankruptcy Petition, BMO commenced a Wisconsin Statutes Chapter 128 Receivership Action against Debtor (and a related entity) in the Circuit Court for Grant County, Wisconsin (Case No. 17CV148) ("Receivership Action") seeking the appointment of Michael Polsky, Esq. as the Wisconsin Statutes Chapter 128 Receiver ("Proposed Receiver"). The instant bankruptcy filing stayed that action and the appointment of the Receiver.

C. On May 5, 2017, the Debtor filed the following "first day" motions seeking relief that would allow the Debtor to continue its operations during the pendency of the above-captioned Chapter 11 Case (the "Case"): (a) the Cash Collateral Motion; (b) Debtor's Motion for entry of an Order (i) Authorizing Payment of Employee Wage Obligations, Payroll Taxes, and Expense Reimbursements; (ii) Authorizing, Maintaining and Honoring Employee Benefit Programs; and (iii) Authorizing Financial Institutions to Honor and Process Checks (the "Employee Wage Motion"); (c) Debtor's Motion for an Order Authorizing Payment of Prepetition Sales, Use, and Other Taxes, Fees and Government Charges (the "Tax Motion"); and (d) the Cash Management Motion (collectively, the "First Day Motions").

D. BMO maintains a first priority security interest in any and all accounts, deposit accounts and contract rights of Debtor, and proceeds thereof owned by Debtor and related to Debtor's current operations (the "Cash Collateral").

E. BMO is unwilling to consent to even limited use of its cash collateral, unless it is provided a replacement lien on personal property acquired by the Debtor post-petition, and BMO

believes that Debtor's proposal does not provide for adequate protection of BMO's security interest.

F.     On May 11, 2017, BMO filed its Omnibus Objection to the Debtor's first day motions which included an objection to the Cash Collateral Motion as Docket Entry No. 24 (the "BMO Omnibus Objection").

G.     On May 11, 2017, BMO filed its Motion for Relief from Stay or, in the Alternative, to Dismiss Debtor's Chapter 11 Bankruptcy in this Case as Docket Entry Number 22 (the "Relief from Stay Motion").

H.     During the hearing on the First Day Motions held by this Court on May 15, 2017, the UST objected to the relief requested in the Cash Management Motion.

I.     On May 17, 2017, this Court entered the Order (the "Interim Cash Management Order") Authorizing Debtor's Use of Prepetition Bank Accounts and Business Forms, pursuant to which: (i) the requirement for the Debtor to open new bank accounts is waived through 5:00 p.m. on May 25, 2017, unless extended by further order of this Court; (ii) the Debtor is authorized, through 5:00 p.m. on May 25, 2017, unless extended by further order of this Court, to maintain and continue using its pre-petition bank accounts in the same manner and with the same account, numbers, styles and document forms as those used prior to the Petition Date; and (iii) the Debtor is authorized to continue all correspondence and business forms as defined in the Interim Cash Management Order.

J.     As of the date of the parties' entry into this Agreed Order, the UST is continuing its efforts to form a creditor's committee, but no official committee has been appointed in this Chapter 11 Case.

K.     The Debtor and BMO, having reached an agreement for the Debtor's interim limited use of cash collateral subject to certain conditions, the Objection to Debtor's Cash

Collateral Motion filed by Commodity Credit Corporation having been withdrawn, the Debtor's intent to withdraw the Employee Wage Motion and the Tax Motion contemporaneous with the filing of this Agreed Order as a proposed order, the Debtor, BMO, and the UST having reached an agreement to extend the Interim Cash Management Order, there being no objections to the Relief from Stay Motion having been filed by any party in interest, and this Court being advised in the premises, the Debtor and BMO agree to the entry of this Agreed Order: (1) Authorizing Debtor's Limited Use of Cash Collateral; and (2) Granting BMO Harris Bank, N.A. Relief from the Automatic Stay (the "Agreed Order").

**THEREFORE, based upon the record and file here and the stipulated facts;**

**IT IS HEREBY ORDERED** that:

1. BMO holds a perfected security interest in the assets of the Debtor as described in its security agreements as collateral for obligations owed to it by the Debtor, including accounts, deposit accounts and contract rights and proceeds thereof.

2. In order to protect BMO's security interest in cash collateral that existed on or after the date of the filing of Debtor's bankruptcy Petition, BMO is hereby provided with a first and paramount post-petition replacement lien (the "Post-petition Lien") on the Debtor's real and personal property, including but not limited to, equipment, livestock, fixtures, inventory, documents, general intangibles, accounts, and contract rights, and specifically including any and all accounts, deposit accounts and contract rights of Debtor, and proceeds thereof owned by Debtor and related to Debtor's current livestock, trucking and excavating operations, except to the extent that any such collateral may be subject to valid, properly perfected, priority liens of pre-petition secured creditors other than BMO.

3. The Post-petition Lien shall be deemed perfected as of the Petition Date upon the entry of this Order. BMO may, but is not required to, file a financing statement with the

Wisconsin Department of Financial Institutions to perfect the Post-petition Lien. The Post-petition Lien shall be deemed to attach to any such assets that the Debtor has an interest in not otherwise described herein.

4. The Post-petition Lien shall not be deemed to attach to any accounts, deposit accounts, contract rights, or other such interests in any 2017 crops that may be planted by the Debtor to the extent that Debtor obtains Court approval for financing to plant during the duration of this Order, except that BMO may be granted a second lien on any such collateral.

5. All of BMO's rights to object to any motion filed by the Debtor to obtain approval for post-petition financing shall be and are hereby preserved for the benefit of BMO.

6. The Debtor may use Cash Collateral to pay post-petition expenses from May 25, 2017 through June 16, 2017, in accordance with the budgets attached to this Order (the "Approved Budgets").The Debtor may only use the Cash Collateral for those budgeted items in the amounts set forth on the Approved Budgets, and Debtor is only authorized to use those funds paid to Debtor that are identified as Revenue on the Approved Budgets as the source of funds to pay those expenses identified on the Approved Budgets. Debtor and BMO expressly agree that the proceeds from the sale of 2016 crops shall not be used to pay any expenses set forth on the Approved Budgets.

7. Other than as provided for in this Order, the Debtor shall not be entitled to use the Cash Collateral.

8. Until the Termination Date (as defined below), the Debtor is authorized to retain its current operating account at BMO. However, in the event that any of the following occur, Debtor shall open a new debtor-in-possession account at an authorized financial institution: (1) the Approved Budgets shall be amended, modified or altered upon BMO's consent and by the Order of the Court, (2) the amount on deposit in the current operating account at BMO shall exceed

$250,000, or (3) Debtor obtains an order approving debtor-in-possession financing. The Debtor shall also provide weekly account history transaction reports to the Office of the United States Trustee (the "UST").

9. Until the Termination Date (as defined below), the Debtor is authorized to continue to use all correspondence, business forms (including, but not limited to, letterhead, purchase orders, and invoices) existing immediately before the Petition Date.

10. As consideration for the Debtor's use of the Cash Collateral, pursuant to the terms of this Order, the Debtor shall deposit with BMO all funds received by the Debtor from its livestock, trucking, and excavating operations as identified on the Approved Budgets. In the event that Debtor is required to open a debtor-in-possession account at a financial institution other than BMO, Debtor agrees to provide weekly account history transaction reports to BMO and to execute an account control agreement evidencing BMO's security interest in Cash Collateral and the operating account.

11. Unless further extended pursuant to an agreement by the parties or by order of the Court, this agreed Order shall terminate at 4:00 p.m. on June 16, 2017.

12. BMO is not agreeing to advance additional funds, but is only permitting Debtor to use Cash Collateral to pay the expenses identified on the Approved Budgets.

13. The Relief from Stay Motion is hereby granted, and BMO's proposed Order granting relief from stay [Docket Entry 23] shall immediately be entered by this Court.

14. Subject to the provisions of paragraph 15 below, BMO shall be and is hereby is entitled to seek the immediate appointment of the Receiver in the Receivership Action, and the Debtor consents to the appointment of the Receiver consistent with the provisions of this Order.

15. As it relates to the Order granting BMO Relief from Stay, this Agreed Order shall be held in abeyance until the earlier of: (1) 4:00 p.m. on June 16, 2017, or (2) such time as Debtor

has insufficient funds to pay operating expenses identified on the Approved Budgets using the source of funds identified on the Approved Budgets (the "Termination Date"). In the event that at any time while this Order is effective Debtor has insufficient funds to pay operating expenses identified on the Approved Budgets using the source of funds identified therein, the Order granting BMO relief from stay shall be immediately effective upon BMO's filing of an Affidavit of Default with the Court identifying that the Termination Date has occurred as a result of Debtor's inability to pay expenses out of available funds.

16. In the event that prior to the Termination Date, following notice to all interested parties and a hearing, this Court enters an order authorizing the Debtor to enter into a post-petition financing agreement for the financing of 2017 crop inputs and related costs and expenses, and if relief from the stay has not otherwise become effective pursuant to Paragraph 15 above, this Court's order granting BMO relief from stay shall be deemed null and void and shall have no effect as to the Relief from Stay Motion.

17. In the event that this Agreed Order is deemed null and void as it relates to the Relief from Stay Motion, BMO's rights to request further hearings on the Relief from Stay Motion or to file a new motion requesting similar relief, shall be and are hereby preserved.

18. In the event that this Agreed Order is deemed null and void as it relates to the Relief from Stay Motion, the Debtor's rights to file an objection to the Relief from Stay Motion or to any new motion requesting similar relief filed by BMO, shall be and are hereby preserved.

19. In the event that this Agreed Order is deemed null and void as it relates to the Relief from Stay Motion, the Debtor's rights to request further hearings upon its Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral and (B) Granting Adequate Protection shall be and are hereby preserved, and BMO's right to object or contest any such relief shall also be preserved.

20. In the event that this Case is dismissed for any reason, the Debtor shall not file any new bankruptcy proceeding until the earlier of (1) forty-five (45) days after the entry of any order dismissing this Case; (2) the earliest date for re-filing permissible under the Bankruptcy Code.

21. The stipulations in Paragraphs A through K above (the "Stipulations") shall be binding on the Debtor, BMO, and the UST and, except as expressly set forth in the immediately following sentence, any person or entity claiming through the Debtor. Until the day that is the later of: (a) thirty (30) days from the formation of an official committee of unsecured creditors (the "Committee"); or (b) fifteen (15) days following the Section 341 Meeting of Creditors; a Committee, if any, shall be entitled to investigate the accuracy of the Stipulations.

**[The remainder of this page has been intentionally left blank.]**

**KREKELER STROTHER, S.C.**
*Proposed Attorneys for Debtor,*
*Crapp Farms Partnership*

Dated 5-23-2017

By: Kristin J. Sederholm, SB #1001895
Eliza M. Reyes, SB #1030764
Jennifer M. Schank, SB #1077110

**AXLEY BRYNELSON, LLP**
*Attorneys for BMO Harris Bank, N.A.*

Dated 5/23/17

By: David M. Pelletier, SB # 1073543

**OFFICE OF THE UNITED STATES TRUSTEE**

Dated 5/23/17

By: Tiffany E. Rodriguez, SB # 1030699 IL

###

# APPROVED BUDGETS

CRAPP FARMS 2017
WEEKLY / BI-WEEKLY
LIVESTOCK BUDGET

| | Weekly Budget 5/27/17 - 6/2/17 | Weekly Budget 6/3/17 - 6/9/17 | Bi-Weekly Budget 5/27/17 - 6/9/17 | Weekly Budget 6/10/17 - 6/16/17 | Weekly Budget 6/17/17 - 6/23/17 | Bi-Weekly Budget 6/10/17 - 6/23/17 | Bi-Weekly Budget Totals |
|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | |
| - Resale of Purchased Livestock | | | | | | | |
| Purch Hogs Sold | 21000 | | 21,000 | | 21,000 | 21,000 | 42,000 |
| Purch Cattle Sold | 120865 | 116471 | 237,336 | 55,657 | 51,263 | 106,920 | 344,256 |
| Resale of Purchased Livestock Total | 141865 | 116471 | 258,336 | 55,657 | 72,263 | 127,920 | 386,256 |
| Revenue Total | 141865 | 116471 | 258,336 | 55,657 | 72,263 | 127,920 | 386,256 |
| | | | | | | | |
| **Cost Of Goods Sold** | | | | | | | |
| - Cost of Purchased Livestock Sold | | | | | | | |
| Feeders -90# Calves | | | 0 | | | 0 | 0 |
| Wean Pigs-12# Piglets | | 42000 | 42,000 | | | 0 | 42,000 |
| Cattle Grower Gain | | | 0 | | | 0 | 0 |
| - Dave Crubel - Cattle | 326 | 326 | 652 | | | 0 | 652 |
| - Matt Brewer - Cattle | 573 | 573 | 1,146 | | | 0 | 1,146 |
| - Greg Crubel - Cattle | 796 | 796 | 1,592 | 796 | 796 | 1,592 | 3,184 |
| - Jim Wilson - Hogs | 3900 | | 3,900 | | | 0 | 3,900 |
| Cost of Purchased Livestock Sold Total | 5595 | 43695 | 49,290 | 796 | 796 | 1,592 | 50,882 |
| - Bedding Cost | | | 0 | | | 0 | 0 |
| Bedding Supply-Produced & Purchased | 1350 | 1350 | 2,700 | 1,350 | 1,350 | 2,700 | 5,400 |
| Bedding Cost Total | 1350 | 1350 | 2,700 | 1,350 | 1,350 | 2,700 | 5,400 |
| - Feed and Supplement Cost | | | 0 | | | 0 | 0 |
| Complete Feed | 5250 | 5250 | 10,500 | 5,250 | 5,250 | 10,500 | 21,000 |
| Distillers | 2850 | 2850 | 5,700 | 2,850 | 2,850 | 5,700 | 11,400 |
| Feed Additives | 3675 | 3675 | 7,350 | 3,675 | 3,675 | 7,350 | 14,700 |
| Feed Corn Shelled | 13125 | 13125 | 26,250 | 13,125 | 13,125 | 26,250 | 52,500 |
| Feed Hay | 1325 | 1325 | 2,650 | 1,325 | 1,325 | 2,650 | 5,300 |
| Feed Premix | 2175 | 2175 | 4,350 | 2,175 | 2,175 | 4,350 | 8,700 |
| Feed Soybean Meal | 4500 | 4500 | 9,000 | 4,500 | 4,500 | 9,000 | 18,000 |
| Feed Meds | 1100 | 1100 | 2,200 | 1,100 | 1,100 | 2,200 | 4,400 |
| Feed Corn Silage | 700 | 700 | 1,400 | 700 | 700 | 1,400 | 2,800 |
| Feed Earlage | 675 | 675 | 1,350 | 675 | 675 | 1,350 | 2,700 |
| Feed Haylage | 625 | 625 | 1,250 | 625 | 625 | 1,250 | 2,500 |
| Feed Preparation | 325 | 325 | 650 | 325 | 325 | 650 | 1,300 |
| Feed Gluten | 2500 | 2500 | 5,000 | 2,500 | 2,500 | 5,000 | 10,000 |
| Feed and Supplement Cost Total | 38825 | 38825 | 77,650 | 38825 | 38825 | 77,650 | 155,300 |
| Cost Of Goods Sold Total | 45770 | 83870 | 129,640 | 40,971 | 40971 | 81,942 | 211,582 |
| | | | | | | | |
| Gross Margin | 96095 | 32601 | 128,696 | 14686 | 31292 | 45,978 | 174,674 |

# CRAPP FARMS 2017 WEEKLY / BI-WEEKLY LIVESTOCK BUDGET

| | Weekly Budget 5/27/17 - 6/2/17 | Weekly Budget 6/3/17 - 6/9/17 | Bi-Weekly Budget 5/27/17 - 6/9/17 | Weekly Budget 6/10/17 - 6/16/17 | Weekly Budget 6/17/17 - 6/23/17 | Bi-Weekly Budget 6/10/17 - 6/23/17 | Bi-Weekly Budget Totals |
|---|---|---|---|---|---|---|---|
| Expenses | | | | | | | |
| Labor Expense | | | 0 | | | 0 | 0 |
| | | | 0 | | | 0 | 0 |
| Labor Wages | 4000 | 4000 | 8,000 | 4,000 | 4,000 | 8,000 | 16,000 |
| - Employee Deduction | 8850 | | 8,850 | | | 0 | 8,850 |
| - 401(k) Contribution | 371 | 371 | 742 | 371 | 371 | 742 | 1,484 |
| - Payroll Taxes | 176 | 176 | 352 | 176 | 176 | 352 | 704 |
| Labor Expense Total | 13397 | 4547 | 17,944 | 4,547 | 4,547 | 9,094 | 27,038 |
| Fuel Expense | | | 0 | | | 0 | 0 |
| Fuel Diesel | 1000 | 1000 | 2,000 | 1,000 | 1,000 | 2,000 | 4,000 |
| Fuel Gas | 150 | 150 | 300 | 150 | 150 | 300 | 600 |
| Fuel Expense Total | 1150 | 1150 | 2,300 | 1150 | 1150 | 2,300 | 4,600 |
| Insurance Expense | | | 0 | | | 0 | 0 |
| Livestock Insurance | 1140 | 1140 | 2,280 | 1,140 | 1,140 | 2,280 | 4,560 |
| Health Insurance | 8200 | | 8,200 | | | 0 | 8,200 |
| Insurance Expense Total | 9340 | 1140 | 10,480 | 1,140 | 1,140 | 2,280 | 12,760 |
| Marketing Expense | | | 0 | | | 0 | 0 |
| Checkoff | 211 | 211 | 422 | 211 | 211 | 422 | 844 |
| Commission | 373 | 373 | 746 | 373 | 373 | 746 | 1,492 |
| Marketing Insurance | 178 | 178 | 356 | 178 | 178 | 356 | 712 |
| Marketing Expense Total | 762 | 762 | 1,524 | 762 | 762 | 1,524 | 3,048 |
| Repair / Maintenance Expense | | | 0 | | | 0 | 0 |
| Repair Equipment | 513 | 513 | 1,026 | 513 | 513 | 1,026 | 2,052 |
| Power Wash Hog Facility | 2500 | | | | | | 2,500 |
| Repair / Maintenance Expense Total | 3013 | 513 | 3,526 | 513 | 513 | 1,026 | 4,552 |
| Supplies Expense | | | 0 | | | 0 | 0 |
| General Supplies | 729 | 729 | 1,458 | 729 | 729 | 1,458 | 2,916 |
| Supplies Expense Total | 729 | 729 | 1,458 | 729 | 729 | 1,458 | 2,916 |
| Utilities Expense | | | 0 | | | 0 | 0 |
| Electric & Phone | 279 | 279 | 558 | 279 | 279 | 558 | 1,116 |
| LP Fuel - Hog Facility | 493 | 493 | 986 | 493 | 493 | 986 | 1,972 |
| Utilities Expense Total | 772 | 772 | 1,544 | 772 | 772 | 1,544 | 3,088 |
| Animal Health Expense | | | 0 | | | 0 | 0 |
| Animal Health Pharmaceuticals | 8425 | 8425 | 16,850 | 400 | 400 | 800 | 17,650 |
| Animal Health Expense Total | 8425 | 8425 | 16,850 | 400 | 400 | 800 | 17,650 |
| Veterinary Services Expense | | | 0 | | | 0 | 0 |
| Veterinary Services | 100 | 100 | 200 | 100 | 100 | 200 | 400 |
| Veterinary Services Expense Total | 100 | 100 | 200 | 100 | 100 | 200 | 400 |
| Contract Production Expense | | | 0 | | | 0 | 0 |
| Contract Yardage | 132 | 132 | 264 | 132 | 132 | 264 | 528 |
| Contract Production Expense Total | 132 | 132 | 264 | 132 | 132 | 264 | 528 |
| Expenses Total | 37820 | 18270 | 56,090 | 10245 | 10245 | 20,490 | 76,580 |
| | | | | | | | |
| Net Income From Operations | 58275 | 14331 | 72,606 | 4,441 | 21,047 | 25,488 | 98,094 |

| CRAPP FARMS TRUCKING WEEKLY / BI-WEEKLY 2017 BUDGET | Weekly Budget 5/27/17 - 6/2/17 | Weekly Budget 6/3/17 - 6/9/17 | Bi-Weekly Budget 5/27/17 - 6/9/17 | Weekly Budget 6/10/17 - 6/16/17 | Weekly Budget 6/17/17 - 6/23/17 | Bi-Weekly Budget 6/10/17 - 6/23/17 | Bi-Weekly Budget Totals |
|---|---|---|---|---|---|---|---|
| Revenue | | | | | | | |
| Gross Receipts or Sales | | | | | | | |
| 3rd Party Customers Only | 48000 | 48000 | 96000 | 48000 | 48000 | 96000 | 192000 |
| Gross Receipts or Sales Total | 48000 | 48000 | 96000 | 48000 | 48000 | 96000 | 192000 |
| Revenue Total | 48000 | 48000 | 96000 | 48000 | 48000 | 96000 | 192000 |
| Expenses | | | | | | | |
| Labor Expense | | | | | | | |
| Labor Benefits Medical Expense | 241 | 241 | 482 | 241 | 241 | 482 | 964 |
| Labor Health Insurance | | | | | | | |
| Labor Insurance Life | 45 | 45 | 90 | 45 | 45 | 90 | 182 |
| Labor Vacation Pay | | | | | | | |
| Labor Wages | 12000 | 12000 | 24000 | 12000 | 12000 | 24000 | 48000 |
| Labor Expense Total | 12286 | 12286 | 24572 | 12286 | 12286 | 24572 | 49144 |
| Benefits Expense | | | | | | | |
| Labor Benefits Pension | | | | | | | |
| Benefits Expense Total | | | | | | | |
| Payroll Taxes | | | | | | | |
| Futa tax expense | 820 | 74 | 894 | 84 | 89 | 173 | 1067 |
| Payroll tax expense | 4020 | 3590 | 7610 | 1098 | 1174 | 2272 | 9882 |
| Suta tax expense | 298 | 272 | 570 | 307 | 327 | 634 | 1204 |
| Payroll Taxes Total | 5138 | 3936 | 9074 | 1489 | 1590 | 3079 | 12153 |
| Fuel Expense | | | | | | | |
| Fuel Expense | 12000 | 12000 | 24000 | 12000 | 12000 | 24000 | 48000 |
| Fuel Expense Total | | | | | | | |
| Insurance Expense | | | | | | | |
| Insurance - Liability | 106 | 106 | 212 | 106 | 106 | 212 | 424 |
| Insurance - Vehicle | 1351 | 1351 | 2702 | 1312 | 1312 | 2624 | 5326 |
| Insurance - Worker's Comp | 814 | 814 | 1628 | 814 | 814 | 1628 | 3256 |
| Insurance Expense Total | 2271 | 2271 | 4542 | 2232 | 2232 | 4464 | 9006 |
| Marketing Expense | | | | | | | |
| Marketing | | | | | | | |
| Marketing Expense Total | | | | | | | |
| Professional Services Expense | | | | | | | |
| E-Log - Software & Support | 1100 | 1100 | 2200 | 1100 | 1100 | 2200 | 4400 |
| Professional Services Expense Total | 1100 | 1100 | 2200 | 1100 | 1100 | 2200 | 4400 |
| Repair / Maintenance Expense | | | | | | | |
| Repairs | 5000 | 5000 | 10000 | 0 | 0 | 0 | 10000 |
| Repair / Maintenance Expense Total | 5000 | 5000 | 10000 | 0 | 0 | 0 | 10000 |
| Supplies Expense | | | | | | | |
| Supplies - General | 697 | 697 | 1394 | 697 | 697 | 1394 | 2788 |
| Supplies - Office | 46 | 46 | 92 | 46 | 46 | 92 | 184 |
| Supplies Expense Total | 743 | 743 | 1486 | 743 | 743 | 1486 | 2972 |
| Utilities Expense | | | | | | | |
| Utilities | 282 | 282 | 564 | 282 | 282 | 564 | 1128 |
| Utilities Expense Total | 282 | 282 | 564 | 282 | 282 | 564 | 1128 |
| Interest Expense-Other | | | | | | | |
| Interest Expense | 420 | 420 | 840 | 357 | 357 | 714 | 1554 |
| Interest Service Charge | 18 | 18 | 36 | 85 | 85 | 170 | 206 |
| Interest Expense-Other Total | 438 | 438 | 876 | 442 | 442 | 884 | 1760 |
| Other Tax Expense | | | | | | | |

CRAPP FARMS TRUCKING
WEEKLY / BI-WEEKLY
2017 BUDGET

| | Weekly Budget 5/27/17 - 6/2/17 | Weekly Budget 6/3/17 - 6/9/17 | Bi-Weekly Budget 5/27/17 - 6/9/17 | Weekly Budget 6/10/17 - 6/16/17 | Weekly Budget 6/17/17 - 6/23/17 | Bi-Weekly Budget 6/10/17 - 6/23/17 | Bi-Weekly Budget Totals |
|---|---|---|---|---|---|---|---|
| Taxes and Licenses | 0 | 0 | 0 | 2560 | 2560 | 5120 | 5120 |
| Other Tax Expense Total | 0 | 0 | 0 | 2560 | 2560 | 5120 | 5120 |
| TOTAL EXPENSES | 39258 | 38056 | 77314 | 33134 | 33235 | 66369 | 143683 |
| PROFIT/LOSS | 8742 | 9944 | 18686 | 14866 | 14765 | 29631 | 48317 |

PROFIT: 48,317

## CRAPP EXCAVATING
## WEEKLY / BI-WEEKLY 2017 BUDGET

| | Weekly Budget 5/27/17 - 6/2/17 | Weekly Budget 6/3/17 - 6/9/17 | Bi-Weekly Budget 5/27/17 - 6/9/17 | Weekly Budget 6/10/17 - 6/16/17 | Weekly Budget 6/17/17 - 6/23/17 | Bi-Weekly Budget 6/10/17 - 6/23/17 | Bi-Weekly Budget Totals |
|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | |
| - Gross Receipts or Sales | | | | | | | |
| Custom Work | 26250 | 26250 | 52500 | 26250 | 26250 | 52500 | 105000 |
| Tiling Revenue | 1500 | | 1500 | | | 0 | 1500 |
| Gross Receipts or Sales Total | 27750 | 26250 | 54000 | 26250 | 26250 | 52500 | 106500 |
| **Expenses** | | | | | | | |
| - Labor Expense | | | | | | | |
| Labor Deductions | 158 | 158 | 316 | 158 | 158 | 316 | 632 |
| Labor Health Insurance | | | | | | | |
| Labor Insurance Life | 101 | | 101 | | | 0 | 101 |
| Labor Vacation Pay | | | | | | | |
| Labor Wages | 4020 | 4020 | 8040 | 4020 | 4020 | 8040 | 16080 |
| Labor Expense Total | 4279 | 4178 | 8457 | 4178 | 4178 | 8356 | 16813 |
| - Benefits Expense | | | | | | | |
| Labor Benefits 401K | 214 | 214 | 428 | 214 | 214 | 428 | 856 |
| Benefits Expense Total | 214 | 214 | 428 | 214 | 214 | 428 | 856 |
| - Payroll Taxes | | | | | | | |
| Payroll tax expense | 1545 | 1545 | 3090 | 1545 | 1545 | 3090 | 6180 |
| Payroll Taxes Total | 1545 | 1545 | 3090 | 1545 | 1545 | 3090 | 6180 |
| - Fuel Expense | | | | | | | |
| Fuel Expense | 1900 | 1900 | 3800 | 1900 | 1900 | 3800 | 7600 |
| Fuel Expense Total | 1900 | 1900 | 3800 | 1900 | 1900 | 3800 | 7600 |
| - Insurance Expense | | | | | | | |
| Insurance - Liability | 328 | 328 | 656 | 328 | 328 | 656 | 1312 |
| Insurance - Equipment | 297 | 297 | 594 | 297 | 297 | 594 | 1188 |
| Insurance - Worker's Comp | 301 | 301 | 602 | 301 | 301 | 602 | 1204 |
| Insurance Expense Total | 926 | 926 | 1852 | 926 | 926 | 1852 | 3704 |
| - Marketing Expense | | | | | | | |
| Marketing | 85 | 85 | 170 | 85 | 85 | 170 | 340 |
| Marketing Expense Total | 85 | 85 | 170 | 85 | 85 | 170 | 340 |
| - Professional Services Expense | | | | | | | |
| On Site Engineer at Job Site | 2000 | 2000 | 4000 | 2000 | 2000 | 4000 | 8000 |
| Professional Services Expense Total | 2000 | 2000 | 4000 | 2000 | 2000 | 4000 | 8000 |
| - Repair / Maintenance Expense | | | | | | | |
| Repairs | 2000 | 2000 | 4000 | 2000 | 2000 | 4000 | 8000 |
| Repair / Maintenance Expense Total | 2000 | 2000 | 4000 | 2000 | 2000 | 4000 | 8000 |
| - Supplies Expense | | | | | | | |
| Supplies - Stone for Projects | 4000 | 4000 | 8000 | 4000 | 4000 | 8000 | 16000 |
| Supplies Expense Total | 4000 | 4000 | 8000 | 4000 | 4000 | 8000 | 16000 |
| **TOTAL EXPENSES** | 16949 | 16848 | 33797 | 16848 | 16848 | 33696 | 67493 |
| **PROFIT/LOSS** | 10801 | 9402 | 20203 | 9402 | 9402 | 18804 | 39007 |
| | | | | | | PROFIT: | 39007 |