UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

In re:

CRAPP FARMS PARTNERSHIP

Debtor.

Chapter 11
Case No. 3-17-11601-cjf

**SECOND DECLARATION OF DARRELL C. CRAPP
IN SUPPORT OF DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS
PURSUANT TO 11 U.S.C. § 364 (C) AND 364(D): (I) AUTHORIZING DEBTOR-IN-
POSSESSION TO INCUR POST-PETITION SECURED INDEBTEDNESS AND (II)
GRANTING SECURITY INTERESTS AND PRIORITY LIENS PURSUANT TO 11
U.S.C. § 364; AND APPROVING THE ASSUMPTION AND SUBLEASE OF CERTAIN
UNEXPIRED FARM LEASES RELATED THERETO**

STATE OF WISCONSIN         )
                           ) ss.
COUNTY OF GRANT            )

DARRELL C. CRAPP, having been duly sworn under oath, hereby declares as follows:

1. I am a partner of Crapp Farms Partnership (hereinafter either referred to as the "Debtor" or as "Crapp Farms"), and I have personal knowledge of the operations, property, business affairs, books and records of Crapp Farms, and the other facts set forth in this Second Declaration.

2. On May 3, 2017 (the "Petition Date"), Crapp Farms filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "Chapter 11 Case.").

3. Crapp Farms is operating its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee, and no official committee has yet been appointed by the Office of the United States Trustee.

4. Crapp Farms requests entry of an order authorizing and approving immediate access to post-petition financing ("DIP Financing") in accordance with the terms and provisions

set forth in a proposed DIP Financing Agreement and Crop Growing Budget which are attached hereto and incorporated herein by reference as <u>Exhibits 1 and 2</u>, respectfully.

5. I submit this second declaration (the "Second Declaration") in support of Debtor's Motion Authorizing Debtor to Incur Post-Petition Secured Indebtedness and Granting Security Interests and Priority Liens Pursuant to 11 U.S.C. § 364 ("DIP Financing Motion"), as well as Debtor's Motion for Assumption of Farmland Leases ("Farmland Leases Motion").

6. I believe that the relief sought in the DIP Financing Motion and Farmland Leases Motion constitutes a critical element in making the Debtor's Chapter 11 case successful and is in the best interest of Crapp Farms, its estate, and Crapp Farms' creditors.

7. Except as otherwise indicated, all facts set forth in this Second Declaration are based on my personal knowledge, information supplied to me by other partners of Crapp Farms' management team or professionals retained by Crapp Farms, information learned from my review of relevant documents, or my opinion based upon my experience and knowledge of Crapp Farms' operations, financial condition and present needs. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Second Declaration on behalf of Crapp Farms.

### **Crapp Farms' Grain Production History**

8. My spouse, Diana Crapp ("Di") and I have been planting grain crops, primarily corn and soybeans, for over 40 years.

9. We formed a partnership in 2003 that includes myself, Di, and our two sons, Carl D. Crapp ("Carl") and Tony D. Crapp ("Tony").

10. The Debtor owns 2,240 acres of real property. Of that amount, we plant approximately _2000_ acres of primarily corn and soybeans and have been doing that for most of our farming years.

11. We expanded our grain operation in 2013 when we added approximately 8,700 acres of land that we rent from Eagle Creek Midwest, LLC ("Eagle Creek").

12. Crapp Farms enjoyed many profitable years due to robust corn and soybean prices. Crapp Farms was also able to acquire rented land in three (3) prairie areas which provided for improved yields per acre.

13. Our production history, particularly with our corn crop, has been very good in that Crapp Farms has consistently have harvested bushels per acre at an average that is higher than the average bushel per acre harvested by other farms in Grant County. However, in the crop years 2015 and 2016, Crapp Farms experienced financial problems due to the decline in corn prices.

14. Crapp Farms' grain operation grew worse in 2015 when BMO Harris, N.A. ("BMO"), our primary secured lender, refused to provide the crop input financing for the 2016 planting season. As a result, Crapp Farms was forced to obtain a line of credit for crop inputs for the 2016 planting season from a different lender, which was utilizing a line of credit that created a much higher interest rate and less favorable terms than previous financing arrangements with BMO.

15. BMO has notified Crapp Farms that it will not provide crop financing for the 2017 crop season.

16. Since December 2016, Crapp Farms has continued aggressive efforts to obtain crop input financing for the 2017 crop season and have looked into several sources to provide the financing. No such sources will entertain financing the 2017 crop inputs on an unsecured basis.

17. One source offered crop financing but insisted on having a lien prior and paramount to liens on collateral that are already subject to BMO's lien, and that proposal was rejected.

18. As the 2017 crop season has proceeded, Crapp Farms has not been able to make payments as required and some landlords who own property that Crapp Farms was planning to rent for the 2017 crop season terminated leases and obtained other tenants prior to Crapp Farms' bankruptcy filing.

19. However, other landlords have continued, as of today's date, to notify Crapp Farms that they will rent to it, most significantly, Eagle Creek. Those farmland leases are subject to the Debtor's Farmland Leases Motion.

20. The purpose of Crapp Farms' bankruptcy filing is to allow Crapp Farms to restructure its farming operation and finances, preserve its going concern value, preserve the jobs of non-family employees, and to reorganize its operations to pay its secured and unsecured creditors, many of whom support the agricultural industry in Wisconsin, particularly in Grant County.

21. In order for Crapp Farms to reorganize, it must be entitled to obtain DIP Financing in order to obtain the funding necessary to purchase the required inputs for the 2017 planting season.

**A. The DIP Financing Motion – Debtor's Motion Authorizing Debtor to Incur Post-Petition Secured Indebtedness and Granting Security Interests and Priority Liens Pursuant to 11 U.S.C. § 364.**

22.  By the DIP Financing Motion, Crapp Farms seeks entry of an order authorizing the financing necessary to purchase the crop inputs, cure farmland leases and pay for other expenses related to the 2017 crop planting season as more particularly set forth in the Budget attached as Exhibit 2.

23.  In consideration for that DIP Financing, Crapp Farms seeks entry of an order authorizing the entities who are providing the DIP Financing a security interest in the Debtor's 2017 crops, 2017 crop insurance, and 2016 and 2017 government payments, which liens will be prior and paramount to the liens of BMO on the same collateral.

24.  Without immediate access to DIP Financing, Crapp Farms will be unable to fulfill its obligations to rent over 9,000 acres of real property and plant 2017 crops. Some of the crops that Crapp Farms will plant will be used to feed its livestock, which currently consists of approximately 4,600 hogs and 2,700 head of cattle.

25.  Crapp Farms' farming operation relies upon annual crops to be planted, grown and harvested to contribute to its income to service its total liabilities.

26.  Crapp Farms needs to have the DIP Financing Motion treated on an expedited basis due to the following: 1) it is already very late in the 2017 crop season to be preparing the land for planting and then planting the corn and soybean crops; 2) the late nature of the DIP Financing becoming available to the Debtor despite our prolonged efforts to obtain crop financing prior to the bankruptcy filing; and 3) the Debtor must cure the rent due on the farmland

leases, as more particularly described in the Farmland Leases Motion, in order to be entitled to possession of the rented ground necessary to plant the 2017 crops.

27. If Crapp Farms is unable to plant its crops until after May 31, 2017, it will start to lose crop insurance coverage at the rate of 1% per day. Currently Crapp Farms has 90% coverage of its crop production for the 2017 crop season. That outstanding percentage is based on Crapp Farms' production history as provided to its insurance carrier, Tricor, Inc.

28. Under the circumstances, I believe that the terms and provisions offered by the lenders, Ag Resource Management and Federal Hybrids, are fair and reasonable in response to our request for financial assistance for the required 2017 crop inputs and other expenses related to planting, maintaining and harvesting the crops during the season, as well as to provide the financing necessary to cure the rents owed on the farmland leases.

29. Based upon the foregoing, I assert that it is in the best interests of the Crapp Farms estate and creditors that the proposed DIP Financing for the 2017 crop inputs be approved by the Court.

**B. Farmland Leases Motion – Motion of the Debtor for Entry of an Order Authorizing the Assumption of Farmland Leases.**

30. By the Farmland Leases Motion, Crapp Farms seeks entry of an order authorizing it to assume written farmland leases with various landlords, and curing the rents that said landlords are currently owed. These farmland leases are for the 2017 crop season. These farmland leases require a pre-payment of at least one-half of the 2017 rent it is charging the Debtor before it will allow the Debtor to take possession of the land and begin planting.

31. If Crapp Farms does not pay such rents immediately upon the leases being assumed, the landlords will seek to reject the leases (probably on an expedited basis) in order to mitigate their damages and rent the land to other tenants.

32. I believe that Crapp Farms' failure to assume the leases and pay the required rents on an expedited basis will adversely impact its ability to plant any crops during the 2017 crop season.

33. Crapp Farms will be able to comply with the remaining terms of the leases, namely, paying the second half of the leases when they come due at the end of the 2017 crop season (November and December, 2017) with the net sale proceeds of its 2017 corn, soybean, wheat and alfalfa crops.

34. Based upon the foregoing, I assert that it is in the best interests of the Crapp Farms estate and creditors that the Farmland Leases Motion be approved by the Court.

## CONCLUSION

35. For the reasons stated herein and in the DIP Financing Motion and the Farmland Leases Motion, I respectfully request that each of these Motions be granted in their entirety, together with such other relief as the Court may deem just and equitable.

I certify under penalty of perjury that, based upon my knowledge, information and belief as set forth in this Second Declaration, the foregoing is true and correct.

Dated: May /9, 2017.

                                                          Darrell C. Crapp
                                                          Crapp Farms Partnership

Subscribed and sworn to before me
this 19th day of May, 2017.

_____
Notary Public, State of Wisconsin
My commission is: 10/29/2019

SANDRA L. WIEST
NOTARY PUBLIC
STATE OF WISCONSIN